STURGISS et al. v. MEURER et al.

(Circuit Court of Appeals, Fourth Circuit.   October 10, 1911.)

No. 1.030.

BANKRUPTCY (§ 318*)—PROVABLE CLAIMS—BREACH OF EXECUTORY CONTRACT.
    Claimant, a large landowner and president of a railroad company, paid a cash bonus to a tin plate company, and agreed to do certain other things, the only consideration for which was a contract by the company to build and operate for five years a tin plate mill on a site donated

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by claimant on the line of his railroad and near his land, of a capacity to employ 500 workmen. Before the mill was completed or ever operated, the company became bankrupt. *Held*, that claimant was entitled to recover the amount of the bonus paid for failure of consideration, and could prove a claim therefor against the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

Cross-Appeals from the District Court of the United States for the Northern District of West Virginia, at Clarksburg.

In the matter of the Morgantown Tin Plate Company, bankrupt. Cross-appeals from orders relating to claims filed against the estate by George C. Sturgiss and others. Affirmed in part, and reversed in part.

On the 9th day of May, 1902, the following contract was entered into between the parties thereto:

"This agreement, made this 9th day of May, 1902, by and between the Morgantown & Kingwood Railroad Company, a corporation organized and existing under the laws of West Virginia, and George C. Sturgiss, of Morgantown, West Virginia, parties of the first part, and the Rolling Mill Company of America, a corporation existing under the laws of the state of New Jersey, hereinafter called the Rolling Mill Company, party of the second part, witnesseth:

"That, for and in consideration of the performance of the covenants hereinafter set forth to be done and performed by the party of the second part, the parties of the first part hereby agree to convey or cause to be conveyed to the Rolling Mill Company about fifteen acres of land for the site of its proposed works, to be located on the land lately owned by the heirs of Jas. U. Beall, deceased, by deed of general warranty, free from all liens and encumbrances, which deed shall be executed and delivered within ten days from this date;

"And will run in and operate a railroad siding or switch of standard gauge along the front and along the rear of the buildings to be located and erected on the said site, free of charge or cost (except as hereinafter provided), to the said Rolling Mill Company;

"And will take, or cause to be taken fifty thousand dollars ($50,000.00) at par value, of the first mortgage six per cent. bonds of the Rolling Mill Company, out of a total issue not to exceed one hundred and fifty thousand ($150,000.00) dollars, to be executed and issued when the said mill company shall have expended one hundred thousand dollars on buildings, machinery and equipments for same, secured by a deed of trust or mortgage on all the property of said Rolling Mill Company, in which deed of trust the bank of the Monongahela Valley, at Morgantown, West Virginia, shall be named as trustee and certifying agent;

"And the parties of the first part further agree to convey or cause to be conveyed to the Rolling Mill Company by deed of general warranty, free from all liens, except the lien for the unpaid purchase money one hundred and fifty acres, more or less, of the Upper Freeport vein or seam of coal (to be drift coal), with the usual mining rights, situate on the line of the said railroad, at a cost not exceeding fifty ($50) dollars per acre, and the payments therefor to be made one-third cash at the time the deed for said coal is executed, which payment is to be credited upon and deducted from the twenty thousand ($20,000) dollars of bonus hereinafter provided for, and the residue is to be paid in one, two, and three years from that date, with interest from that date, with a vendor's lien retained for the securing of the unpaid purchase money and interest;

"And the parties of the first part further agree to transport the coal from the said tract or the mines opened thereon to the siding of the Rolling Mill Company's proposed plant, at a cost of five cents per net ton.

"The parties of the first part further agree to pay to the Rolling Mill Company the sum of twenty thousand ($20,000) dollars as a bonus and induce-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment for the location of said company's proposed plant on the line of the Morgantown & Kingwood Railroad on said Beall land, payable in one, two, and three months from this date, and to pay all taxes on the Rolling Mill Company's property situate on the said land for the first five years from April 1st, 1902:

"Parties of the first part further agree that until satisfactory freight rates are arranged with the Baltimore & Ohio Railroad Company or some competing or connecting lines they will make the charge for switching between the B. & O. Railroad connections at Morgantown, West Virginia, and the Rolling Mill Company's plant, over the line of the Morgantown & Kingwood Railroad, one dollar per car for all incoming and outgoing freights; and after satisfactory freight rates have been arranged with connecting roads, will charge an agreed rate with such connecting railroad, which charge to be absorbed or included in the freight rate charged by such connecting line.

"The parties of the first part further agree that if the B. & O. Railroad, or its connecting lines, refuse to allow the usual reduction in freight rates on construction materials employed in building said plant and equipping the same, they will pay the said Rolling Mill Company the difference between the rates charged and the usual reduced rates charged on construction materials for plants erected on the said B. & O. Railroad Company's lines.

"And in consideration of the performance by the parties of the first part of the covenants and agreements hereinbefore set forth to be done and performed by the said parties of the first part, the said Rolling Mill Company of America hereby agrees that it will, without avoidable delay, locate, construct and put into operation on the site aforesaid a rolling mill for the manufacture of black sheets, tine and terne plates; and to continue to operate the same, strikes and unavoidable hinderances and delays excepted, for a term of five years; and give employment to about five hundred work people.

"The party of the second part further agrees that it will execute a mortgage or deed of trust upon all of its property, after it shall have expended the sum of one hundred thousand ($100,000) dollars in buildings, machinery, and equipments, to secure the sum of one hundred and fifty thousand ($150,000) dollars of first mortgage bonds, bearing interest at six per cent. payable semiannually, designating the Bank of Monongahela Valley as trustee and certifying agent.

"In witness whereof the Morgantown & Kingwood Railroad Company has caused these presents to be signed in its corporate name by its president, and the seal thereof to be affixed, attested by its secretary; and the said Geo. C. Sturgiss has signed and sealed the same the day and year first above written; and the said Rolling Mill Company of America has caused these presents to be signed in its corporate name by its president, and the corporate seal to be thereto affixed, attested by its secretary the day and year first aforesaid.

"[Signed]   Morgantown & Kingwood Railroad Co.,

"[Seal.]                    By Geo. C. Sturgiss, Its President.

"Attest:  S. G. Chadwick, Jr., Secretary.

"Geo. C. Sturgiss,                        [Seal.]

"Rolling Mill Company of America,

"[Seal.]                    By W. J. Logan, Its President.

"Attest:  H. L. Kurtz, Secretary."

In December, 1902, the Morgantown Tin Plate Company was incorporated, and on the 19th of December in the same year took over and received all of the property formerly owned by the Rolling Mill Company of America, one of the parties to the foregoing contract, subject to the liabilities of the said company, and the said Tin Plate Company assumed the debts and liabilities of the Rolling Mill Company, and undertook the erection and operation of the rolling mill plant contemplated by the said contract. The capital stock of the Morgantown Tin Plate Company was $150,000 and it was also authorized to issue $150,000 of first-mortgage bonds. In obedience to the terms of the contract, Geo. C. Sturgiss conveyed to the Tin Plate Company the land for the site of the plant, and also paid to the company $20,000 as the bonus and inducement contemplated by the contract less the $2,500 which was reserved under the stipulation relative to the conveyance of certain coal lands

set out in the contract. The company commenced the erection of the plant on the site conveyed by Sturgiss and continued the work until $100,000 had been expended, and thereupon the $150,000 of first-mortgage bonds were issued, and Sturgiss, as he had agreed, took $50,000 of them. The Tin Plate Company continued the construction of the mill until February, 1904, when, before the plant was completed or put in operation, the said company acknowledged its inability to continue the work, admitted its insolvency, and on the 2d day of April, 1904, upon due proceedings had, was duly adjudged bankrupt.

The property of the bankrupt was sold, and from the sale sufficient assets were realized to pay the entire indebtedness of the bankrupt, save the claims in controversy in this proceeding, and a small sum due for taxes (which last item, however, is not involved in this litigation), and left in the hands of the trustee a balance of assets of $51,174.70 undisposed of. The claims in controversy are three in number, to wit: The claim of George J. Humbert for $3,-746.47 for salary as engineer of construction and for money advanced for pay rolls, etc. Proof of this claim was duly filed on the 11th of April, 1904. Another is the claim of the Morgantown & Kingwood Railroad Company for $1,741.40 for freights and demurrage, proof of which was duly filed on the 15th of April, 1904. The third claim is that of Geo. C. Sturgiss for $17,500, the amount which he paid to the company as the bonus or inducement to locate the plant, the original proof of which was filed on the 11th of April, 1904, and an amended proof thereof filed on the 9th of July, 1909. Jacob Meurer, a creditor of the bankrupt, filed objections to these proofs. These objections were overruled by the referee and the several claims as follows: The claim of George J. Humbert (which had been duly assigned to Geo. C. Sturgiss) for $3,746.47 with interest thereon from the 15th of April, 1904, the claim of the Morgantown & Kingwood Railroad Company (which had been duly assigned to Geo. C. Sturgiss) in the sum of $1,741.40, with interest thereon from the 2d October, 1903, and the claim of Geo. C. Sturgiss for $17,500, with interest thereon from the 16th of August, 1902—were allowed. To the action of the referee in allowing these claims and directing them to be paid from the assets of the bankrupt, Jacob Meurer excepted, and upon review the District Court in the Northern District of West Virginia sitting in bankruptcy sustained the action of the referee in allowing the Humbert claim and confirmed the referee's report in this respect, but reversed the action of the referee in allowing the claim of the Morgantown & Kingwood Railroad Company and the claim of Geo. C. Sturgiss, and set aside the report of the referee in respect to these two.

The case is brought to this court by cross-appeals, Meurer having appealed from the judgment of the District Court in confirming the report of the referee allowing the Humbert claim, and Sturgiss having appealed from the judgment of the said court disallowing the other two claims.

B. M. Ambler (W. W. Van Winkle and Mason G. Ambler, on the brief), for appellants Sturgiss and others.

Reese Blizzard, for appellant Meurer and appellees Logan and others.

Before GOFF, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge (after stating the facts as above). After this general outline of the facts, we will proceed to consider the several points which arise in the controversy, and will refer to such further facts in the record as may be necessary. It may be stated in the outset that no creditor of the bankrupt is now interposing any objection to the payment of the claims involved, for even Meurer, who was at one time a creditor, has been paid his debt from the assets of the bankrupt's estate. The record shows that the trustee when he was urged to oppose the payment of these claims declined to do so on the ground

that upon investigation he had ascertained that the said claims were valid. Neither does the bankrupt as a legal entity in its corporate capacity object to the payment of the claims, but Meurer, an individual stockholder in the corporation and the owner of 90 per cent. of its stocks, as shown by the record, alone and upon his own responsibility is objecting to the payment of these claims, and insists that the money now in the hands of the trustee amounting to $51,174.70 should be distributed to the stockholders, instead of being paid upon the said claims or any of them.

The first of the questions we will dispose of is as to the Humbert claim which was passed upon and allowed by the referee, and his report in this respect was confirmed by the District Court sitting in bankruptcy over the objection of Meurer. In our opinion there is no force in the grounds assigned by Meurer in opposition to the payment of this claim, for upon the testimony taken by the referee he found the fact that the claim was due and was a valid one against the estate of the bankrupt. This finding of fact was sustained by the learned judge of the District Court. We do not deem it necessary to further deal with this claim than to give our sanction to the action of the lower court thereon.

The claim of $1,741.40 which was allowed by the referee as due to the Morgantown & Kingwood Railroad Company for freights and demurrage, and which was afterwards assigned to Geo. C. Sturgiss, is, we think, also a valid one, that the findings and decisions of the referee with regard thereto were proper, and that the District Court was in error in sustaining the objections which were filed to the said claim, and that the same should be allowed and paid from the assets arising from the estate of the bankrupt as found and reported by the referee.

Lastly is the claim of Geo. C. Sturgiss for $17,500, being the amount which he paid as a bonus under the contract (reserving, as hereinbefore stated, $2,500 as provided in the contract in the stipulation relative to the conveyance of the coal lands). Original and amended proof of this claim was filed as set out in the statement of facts above. The claim with interest thereon was allowed by the referee, but the District Court upon a review of the referee's action sustained the objections of Jacob Meurer to the claim, reversed the report of the referee, and held that the said claim should not be paid.

The conditions surrounding the making of the contract as clearly shown by undisputed facts fully enlighten us as to the motive which prompted Sturgiss to enter into it. He was the owner of large landed estate adjacent to the site of the plant, which he desired to improve in value by the erection of the manufacturing concern. He was interested in the railroad which would be benefited by an increase in freights, and he had coal lands for which a purchaser would be provided. The desired end was to be accomplished by the erection of the rolling mill plant and its operation for five years with the employment of five hundred hands, and to secure this he entered into the contract, conveyed the land for the site, paid the bonus, and invested in the bonds anticipating the performance of the agreement on the part of

the Tin Plate Company by the completion of the plant and its operation according to the terms of the contract.

Our view of the contract is that Sturgiss agreed to do three several material things antecedent to the completion of the plant and the beginning of its operations, namely, convey a site on which to erect the mill, to pay $20,000 bonus or inducement for the erection and operation of the plant as contemplated by the contract, and, when the company in the course of its work had expended $100,000, he was to take $50,000 of the first-mortgage bonds. We do not agree with the position of Meurer's counsel that the provisions of the contract in reference to the coal lands and the freight rates were to be complied with by Sturgiss and the Railroad Company before the plant was completed and coal was needed for its operation, and transportation facilities required for supplies and the output of the mill. The counsel also sets forth in his brief a series of obligations which he alleges rested upon Sturgiss by the terms of the contract, and which he insists that Sturgiss failed to perform; but, under a proper construction of the contract, it is our conclusion that Sturgiss did all that was required of him which was necessary so far as he was concerned to the completion of the structures and the equipment of the plant for work. It is true that other duties devolved upon Sturgiss after this was done, but the failure of the Tin Plate Company took place before the plant was ever completed or put in readiness for operation. There is no sufficient evidence in the record to show that the failure of the Tin Plate Company to complete the plant and carry out its contract was due to any default on the part of Sturgiss, and there was no complaint that Sturgiss had failed to perform his part of the contract until after the company abandoned the contract, acknowledged its insolvency, was adjudged bankrupt, and this controversy arose about the payment of the debts.

Following the course of our reasoning upon this last-named claim, we are of the opinion that the $17,500 was paid by Sturgiss upon an express condition to be performed by the Tin Plate Company, which condition was the sole consideration of the payment, and that upon the failure of the company to perform its part there accrued to Sturgiss a cause of action based upon an implied contract to repay. This principle we think is well sustained in the case of Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, in which Chief Justice Fuller speaking for the court, after reviewing the American and English cases relating to breaches of an executory contract by the refusal on the part of one party to perform it, lays down the rule to be:

"That, after the renunciation of a continuing agreement by one party, the other party is at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damages he has suffered from the breach of it."

The same principle will be found very forcibly presented in the case of Griggs v. Austin, 3 Pick. (Mass.) 20–22, 15 Am. Dec. 175, wherein it is said:

"It is a clear principle of the common law that when money is paid or a promise made by one party in contemplation of some act to be done by the other, which is the sole consideration of the payment or promise, and the

thing stipulated to be done is not performed, the money may be recovered back or the promise founded on such consideration may be avoided between the parties to the contract."

And in 3 Page on Contracts, § 1475, p. 2275, it is laid down that:

"If money has been advanced or property delivered for a consideration which has failed, the injured party may recover what he had paid under the contract."

We do not deem it necessary to go further in disposing of the case than to state our conclusion as follows: That as to the claim filed in the name of George J. Humbert, and which was assigned to Geo. C. Sturgiss, the judgment of the District Court be affirmed, and that the said claim, together with interest as stated by the referee, be paid; that as to the claim filed in the name of the Morgantown & Kingwood Railroad Company, assigned to Geo. C. Sturgiss, the judgment of the District Court is reversed, and the claim allowed, together with interest according to the proof and statement filed in the case. As to the claim of $17,500 filed by Geo. C. Sturgiss, the judgment of the District Court disallowing the same is reversed, and the claim is allowed to be paid, with interest from April 2, 1904, the date of the adjudication in bankruptcy of the Tin Plate Company.

The case will be remanded to the District Court for the Northern District of West Virginia, with directions to proceed according to the views herein expressed.